## IN THE MATTER OF THE ALLEGED LUNACY OF SARAH COLLINS.

1. This court can and will order a second inquisition of lunacy when the first is irregular or unsatisfactory, from the finding being against evidence, or by a mistake of the jury as to their duty. Or it will order a second inquisition at some time after the first, if it appear that there is an evident change in the condition of the subject.

2. The substitution of a new commissioner for one appointed by the Chancellor, without his approval or confirmation, no one of the commissioners being a master of the court, is such an irregularity as would set aside the inquisition if urged for that purpose at or before the motion for confirmation, but would be without effect, upon the argument of a rule to show cause why a commission should not issue.

3. Imbecility for which a commission will issue, must amount to unsoundness of mind.

4. The presumption of law is not against the soundness of mind of a person one hundred years of age.

5. Where unsoundness of mind is proved, and the question is as to the degree of it, and it appears that the subject never had any property to control until the issuing of the commission, the court and inquest would and should look at the value and importance of the property to be controlled by her, and also to the persons by whom she is surrounded, and their conduct.

*Mr. Williamson,* for the petition.

*Mr. W. J. Magie,* contra.

THE CHANCELLOR.

A petition for a commission *de lunatico inquirendo* is presented by Noah Collins, the son of Sarah Collins, accompanied by affidavits sufficient, if standing alone, to warrant an order for the commission. But it appears that on a petition filed by the same son, an inquisition was had on the twelfth of July, 1865, and that Sarah Collins was found not to be of unsound mind; and that on the twenty-third of April last, the Chancellor quashed a subsequent order for a commission, made shortly before, on the ground that no change was shown in the condition of Sarah Collins since the inquisition. For these reasons a rule to show cause why the commission should not issue was directed, and depositions ordered to be taken. The cause was argued upon the rule to show cause, and depositions taken on both sides at great length.

This court can and will order a second inquisition, either when the first is irregular or unsatisfactory from the finding being against evidence or by a mistake of the jury as to their duty; or it will order a second inquisition, at some time after the first, if it appears that there is an evident change in the condition of the subject.

The irregularity here alleged is, that by consent of the solicitors on both sides, a new commissioner was substituted for one appointed by the Chancellor, without his approval or confirmation; and that no one of the commissioners was a master of this court. This was an irregularity that would have set aside the inquisition, if it had been urged for that purpose at or before the motion for confirmation. But this irregularity cannot affect the inquisition in this collateral way. Besides, this matter was urged before the late Chancellor on the motion to quash the second commission in April last, and passed upon by him. His order to quash was based

on the sufficiency of the inquisition. I do not think there is anything in the conduct of the inquisition to discredit it, or to detract from its weight on this motion.

The commission may undoubtedly issue in cases of imbecility of mind arising from old age, but it will not for every imbecility, or on the fact that the mind is somewhat impaired.

The imbecility must amount to unsoundness of mind. *Vanauken's case*, 2 *Stockt.* 186; *Barker's case*, 2 *Johns. C. R.* 232. The mind must be unsound, so as not to be able to apply its faculties in their weakened and impaired state to the objects in question.

Sarah Collins is in the hundredth year of her age. Her sight is very much impaired, and her hearing somewhat. At her age, the presumption of law is not against her soundness of mind, however great the probability in fact may be that she is not sound. But even with the presumption against her soundness from her extreme age, the evidence has failed to convince me that a new commission ought to issue. The great weight of testimony, so far as regards the opinion of much the largest number of equally intelligent witnesses, is in favor of her soundness. The weight of the medical testimony is so, either regarding the number of witnesses or the reasoning on which their conclusions are founded. The facts proved, while they show that her senses and physical powers are much impaired, and that her mental faculties are somewhat weakened, fail to show anything that would amount to unsoundness so as to make her incapable of managing her affairs. She may be so weak and infirm as to be easily influenced or imposed upon, which would be a reason for setting aside any instruments or transactions executed under the effect of such influence, but this does not amount to unsoundness, such as to take from her the control of herself and her property.

Where unsoundness is proved, and the question is as to the degree of it, the court and inquest would and should, as urged by the counsel of the petitioner, look at the value and importance of the property to be controlled, connected with

the fact that she never had any property to control until now, and that, from that circumstance, her incapacity would be greater than in case of a person used to managing property, with like unsoundness of mind; and also look to the persons by whom she is surrounded, whether they were not attempting to obtain advantages in her imbecile state, which she might and would, under other circumstances, resist. Looking at the evidence from this point of view, I do not see sufficient proof of unsoundness or incapacity to warrant me in ordering a commission.